Submitted on briefs December 18, 1918, affirmed February 4, rehearing denied April 1, 1919.

## SANBORN-CUTTING CO. *v.* BUTLER.

(178 Pac. 228, 179 Pac. 573.)

**Costs—Offer of Judgment—Interest on Offer.**

1. In fixing liability for costs under Section 532, L. O. L., where offer of judgment has been made, interest should not be added to the amount of the offer between its date and the date of judgment, the proper rule being to measure the offer and the judgment as of the date when the offer was made.

**Words and Phrases—"Liquidated Claims."**

2. An account is not liquidated, even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a general dispute as to which is the proper amount, is regarded as unliquidated.

**Costs—Offer of Judgment—Interest.**

3. Where defendant made an offer of judgment for $126 and judgment was for $126.70, plaintiff is entitled to costs under Section 532, L. O. L., where it does not appear what part of the judgment was for interest.

ON PETITION FOR REHEARING.

**Appeal and Error—Presumption—Instructions.**

4. In the absence of showing to the contrary, it must be assumed, on appeal, that the court correctly instructed the jury as to what was the only dispute between the parties.

**Appeal and Error—Presumption—Following Instructions.**

5. Where the verdict was for an impossible amount, had the jury followed all the instructions, it cannot be presumed that instruction

to allow interest was followed, and that the verdict included interest, thus rendering erroneous allowance of costs to plaintiff, in view of defendants' offer of judgment.

From Tillamook: GEORGE R. BAGLEY, Judge.

In Banc.

On the eleventh day of April, 1917, plaintiff began an action to recover a balance alleged to be due upon an account, together with interest thereon from an average date. On the twenty-sixth day of the same month, defendants served upon plaintiff, and subsequently filed, an offer of compromise in the following form:

"The defendants in the above-entitled cause hereby offer to allow judgment to be given against them in said cause for the sum of $126."

This offer was not accepted. On the same day an answer was filed, admitting the original indebtedness, but denying that the balance due was as large as that claimed by plaintiff, and denying any liability for interest thereon. It is then alleged that in addition to the payments for which credit is allowed in the complaint, defendant had made a further payment of $500, thereby reducing the debt to the sum of $125.85, and no more.

A reply was filed, denying the new matters set up in the answer, and on June 18, 1917, a trial was had to a jury, resulting in a verdict for the plaintiff in the sum of $126.70. After the return of the verdict the defendants requested the court to enter a judgment in their favor for their costs and disbursements, when entering judgment for plaintiff upon the verdict. This was declined by the court and a judgment was entered for plaintiff for the sum of $126.70 and for its costs and disbursements in the sum of $71.80, and defendants appeal.                                        AFFIRMED.

For appellants there was a brief submitted over the name of *Mr. H. T. Botts.*

For respondent there was a brief prepared by *Messrs. Johnson, Handley & McGrath,* and *Messrs. G. C. & A. C. Fulton.*

BENSON, J.—The bill of exceptions discloses that upon the trial the court, pursuant to an agreement of the parties, instructed the jury that whatever amount should be found due to plaintiff should bear interest at the rate of 6 per cent per annum from September 20, 1915. The only dispute between the parties was upon the question as to whether or not the defendants were entitled to an additional credit of $500, which they claimed to have paid by check. The verdict being in excess of the offer in the sum of seventy cents, the judgment is obviously more favorable, unless, in the comparison, we consider the interest which would have accrued upon the amount offered, between the date of the offer and the date of the judgment. The defendant insists that in fixing liability for costs and disbursements, under the provisions of Section 532, L. O. L., that such interest should be added to the offer, thereby making it, at the date of judgment, slightly larger than the amount of the verdict and judgment. In support of this doctrine our attention is called to the following authorities: 11 Cyc. 80; *Pike* v. *Johnson,* 47 N. Y. 1; *Bathgate* v. *Haskin,* 63 N. Y. 261; *Kellogg* v. *Pierce,* 60 Wis. 342 (18 N. W. 848). We are unable to discover wherein any of these cases support defendant's contention. The section of 11 Cyc. which is cited, says:

"Where a claim in suit is unliquidated no interest can be added to the sum offered, for the purpose of de-

-termining whether the judgment obtained is more favorable than that offered; and in case of a claim which is not unliquidated the court, in determining whether the recovery is more favorable than the offer, will reject the interest which accrued between the time of the offer and the recovery of the judgment, and will include interest computed only to the date of the offer.''

The doctrine thus expressed is adopted in *Kellogg* v. *Pierce,* 60 Wis. 342 (18 N. W. 848), wherein the complaint demanded $166.15, and on February 21, 1880, defendant offered to permit plaintiff to take judgment for $80, which offer was refused. A judgment was finally entered for $68.87, with interest from October 21, 1879, and the opinion of the court holds, *that at the time of the offer,* the principal sum specified in the judgment could not have amounted to $80. So far then, as this case is of value, it teaches that in Wisconsin, the offer and the judgment are compared as to their value at the date of the offer, and seeks to determine which was then ''more favorable'' to the plaintiff. This view is perfectly logical and just, for it is then that the plaintiff is called upon to determine his cause of action. But this does not tend to support the theory that the court should compute interest upon the offer itself from its date to the date of judgment. Particularly is this true in the case at bar, where the record gives us no clue as to what portion of the judgment, if any, is interest, and what portion is principal.

The New York case, *Pike* v. *Johnson,* 47 N. Y. 1, was one in which, upon appeal, the plaintiff offered a reduction of his judgment to $50, which offer was declined. After a lapse of six years the cause was tried to a jury, which returned a verdict of $50, but the record discloses that the jury in arriving at this verdict, included $14.74 of interest, and the court says:

"We hold that the defendant was entitled to recover costs. We hold that in such a case interest added by a jury or by the court to the damages found cannot be estimated in determining whether a judgment is more or less favorable to the appellant than the offer of the respondent. We do not enter into any discussion of the question."

The case of *Bathgate* v. *Haskin,* 63 N. Y. 261, was for the foreclosure of a mortgage and a personal deficiency judgment. Defendant pleaded a counterclaim and tendered a judgment for a specified sum which was refused. Upon the trial there was a decree of foreclosure and a personal judgment for a sum less than the offer, the counterclaim having been allowed. In concluding, the opinion says:

"The defendants were clearly entitled to have interest computed upon the amount of the offer from the time it was made to the date of the judgment. The rule that interest cannot be added to the sum offered in determining whether the judgment is more favorable, is only applicable to actions where the damages are unliquidated, and not to a case like this."

1–3. *Johnston* v. *Catlin,* 57 N. Y. 652, was an action to recover for services rendered. Defendant tendered a judgment for $105, and six months later there was a judgment for plaintiff in the sum of $106, and it was held that interest could not be added to defendant's offer to entitle him to costs, because it was an unliquidated claim. What, then, is an unliquidated claim? 5 Words & Phrases, 4174, says:

"A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a general dispute as to which is the proper amount, is regarded as 'unliquidated' within the meaning of that term as applied to the subject of accord and satisfaction."

The same authority says also, that "a claim is not liquidated when the balance due is fairly disputed." And "a debt is 'liquidated' when it appears that something, and how much, is due." Many authorities are cited in support of these definitions and applying such test to the claim in this case, the New York citations are against the contention of appellant. In our own state, authorities upon the precise point appear to be wanting, and the only case in the Oregon Reports to which our attention has been called is that of *Hammond* v. *Northern Pac. R. R. Co.*, 23 Or. 157 (31 Pac. 299). In this case the plaintiff sued for a specified sum and the defendant in its answer admitted its liability for the sum of $198.85, and offered to allow plaintiff to take judgment for that amount with costs. This offer was refused and upon a trial the jury returned a verdict for the plaintiff in the sum of $198.85, the exact amount of defendant's offer. In the course of the opinion, Mr. Chief Justice Lord says:

"When, therefore, in an action to recover money, the defendant, to put an end to the litigation, offers under Section 520, to allow judgment to be entered for a sum specified, and the plaintiff refuses to accept it, and fails to recover judgment for a sum more than was offered by the defendant, he is liable for the costs and disbursements from the time of the service of the offer."

The question of computing interest upon the offer from its date to the time of judgment is not mentioned. But we think that the proper rule is to measure the offer and the judgment as of the date when the offer was made, and since the record gives no basis for determining what the value of the judgment may have been at that time, we have no data upon which to base any change in the judgment of the lower court, and it is therefore affirmed.                    Affirmed.

Rehearing denied April 1, 1919.

ON PETITION FOR REHEARING.

(179 Pac. 573.)

In Banc.

HARRIS, J.—Because of the earnestness displayed by the defendants in their petition for a rehearing we have again examined the question presented by the record; but we arrive at the same conclusion that was reached in the original opinion: *Sanborn-Cutting Co.* v. *Butler, ante,* p. 619 (178 Pac. 228). The plaintiff corporation says in its complaint, which was filed on April 11, 1917, that between July 7, 1914, and September 20, 1915, and at the instance and request of the defendants, who are partners, it sold goods to, paid expenses and rendered services for the partnership. The complaint contains an itemized statement of the several items entering into the account. The corporation alleges that the items are reasonably worth the respective amounts shown in the statement and that their aggregate reasonable value is $1,289.56. The corporation also avers that it is entitled to interest at the rate of seven per cent per annum from September 21, 1914, the alleged average due date, to September 20, 1915. The plaintiff alleges that no payments have been made except the sum of $750, which was paid on September 20, 1915.

The answer denies that the plaintiff is entitled to interest, admits that between July 7, 1914, and September 20, 1915, at the request of the partnership, the corporation sold goods to, paid out moneys and rendered services for the partnership and that $1,289.56 is the reasonable value of the items. The partners also admit in their answer that $750 was paid on the account on September 20, 1915; and they allege that an addi-

tional sum of $500 was paid on August 15, 1915. The corporation replied by denying that it received $500 from the partnership.

Thus it is seen that by their pleadings the litigants agreed that the corporation was entitled to a credit of $1,289.56 and that the partnership was entitled to a credit of $750. The pleadings raised only two issues: (1) As to the interest; and (2) as to the $500 payment. However, the question of interest was eliminated from the controversy; for pursuant to a stipulation entered into by the parties—

"the court instructed the jury that whatever amount was found by the jury as the balance owing by defendants to plaintiff should bear interest at the rate of six per cent per annum from September 20, 1915, the parties, by their respective counsel, agreed that plaintiff was entitled to receive interest on the balance of the account, whatever it might be, from that date."

The question of interest having been settled, it will be seen that when the cause was submitted to the jury—

"the only dispute" as stated in the bill of exceptions, "between the parties was whether the defendants by means of a check drawn by them in favor of Sanborn & Son, but with the direction written thereon that same was to apply on Sanborn-Cutting account, the defendants claiming that Sanborn & Son were the agents of the plaintiff for the purpose of receiving said payment."

In the original opinion Mr. Justice BENSON, speaking for the court, said:

"We think that the proper rule is to measure the offer and the judgment as of the date when the offer was made."

The application of this rule will accomplish the purpose for which the statute was designed. In other

words, to ascertain whether the judgment is more favorable than the offer the judgment must, of course, be compared with the offer; and if the judgment includes a principal sum and also interest on that principal sum computed from a date prior to the time of the offer, then whatever interest accrues since the date of the offer and enters into the judgment should be subtracted from the judgment and the remainder becomes the amount which is to be compared with the offer: *Schulte* v. *Lestershire Boot & Shoe Co.,* 88 Hun, 226 (34 N. Y. Supp. 663, 664); *Tilman* v. *Keane,* 1 Abb. Pr. (N. S.) (N. Y.) 23, 27; *Budd* v. *Jackson,* 26 How. Pr. (N. Y.) 398, 400; *Kellogg* v. *Pierce,* 60 Wis. 342 (18 N. W. 848); 15 C. J. 805.

It will not be necessary to analyze the argument made by the petitioners concerning the meaning of the term "liquidated" when used in connection with the allowance of interest. In the absence of the stipulation providing for the allowance of interest the plaintiff would not have been entitled to interest from September 20, 1915: *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16, 39 (154 Pac. 759, 156 Pac. 431). Moreover, except for the stipulation, interest would have been disallowed on the authority of precedents made by decisions prior to *Sargent* v. *American Bank & Trust Co.* None of the items, except those for moneys disbursed, were liquidated, within the meaning of that term, until the answer was filed. Adjudications can be found in other jurisdictions supporting the argument that the account sued upon should be treated as a claim which was at all times liquidated; but *Hawley* v. *Dawson,* 16 Or. 344, 348 (18 Pac. 592), expresses the opposite view: See, also, *Smith* v. *Turner,* 33 Or. 379, 381 (54 Pac. 166).

4. The court instructed the jury that the corporation was entitled to interest at the rate of 6 per cent per annum from September 20, 1915. The defendants contend therefore that we are obliged to assume that the jury followed the instructions of the court. Assuming that the jury did obey the directions of the court then a mathematical calculation will demonstrate that the jury found that the principal sum owing from the partnership to the corporation from September 20, 1915, was $114.70; that this principal sum with interest to April 26, 1917, the date of the offer, amounts to $125.70; that this principal sum with interest to May 7, 1917, the date when the court convened, comes to $125.90; and that, therefore, since the partnership offered to compromise for $126.00, the judgment rendered on June 18, 1917, after first deducting interest in accordance with the rule, is less than the offer, whether the date of the offer or the date when court convened is taken as the proper time for making the comparison. The position taken by the defendants would be impregnable if no facts could be considered except those upon which the partners base their contention. But we are bound to assume that the court also correctly instructed the jury that—

"the only dispute between the parties was whether the defendants were entitled to credit for a payment of $500 made by the defendants by means of a check drawn by them."

5. It is conceded that the corporation was entitled to a credit of $1,289.56 and that the defendants were entitled to a credit of $750, leaving a balance of $539.56. If, then, the $500 check should be credited to the partnership the balance due on September 20, 1915, was $39.56; but if the defendants were not entitled to be credited with the check for $500 then their

net indebtedness on September 20, 1915, was $539.56. As already stated, we must assume that the court properly instructed the jury concerning the contested $500 check; and with this assumption in mind it is obvious that the jurors could not find $114.70 as the principal sum due the plaintiff on September 20, 1915, and at the same time obey the instructions of the court. On September 20, 1915, the partnership either owed only $39.56 or $539.56, depending upon whether the partnership had or had not paid the additional $500. The argument of the defendants involves the assumption that the jurors found that the defendants owed $114.70 on September 20, 1915. This assumption necessarily involves an admission that the jury declined to obey the instructions of the court. The entire record of the trial is not before us; but upon the record presented to us we are confronted with a situation where the jury disobeyed the instructions of the court either by arbitrarily fixing $114.70, an impossible amount under the pleadings, as the principal sum due on September 20, 1915, and then calculating interest on that sum to June 18, 1917, or by arbitrarily fixing $126.70 without interest as the amount due, or by taking the amount of the offer, after having been made acquainted in some manner with the offer, and then adding 70 cents to that amount for the purpose of compelling the defendants to pay the costs and disbursements. Each of the three suppositions involves a failure of the jury to obey an instruction of the court. It is impossible for us to ascertain how the jurors arrived at their verdict and therefore we repeat what we said in the original opinion:

"The record gives no clue as to what portion of the judgment, if any, is interest, and what portion is principal."

If the verdict returned by the jury squared with the only issue made by the pleadings and with all the instructions given by the court then we would be able to determine exactly how much interest entered into the verdict and how much interest should be deducted from the judgment for the purpose of comparing it with the offer. On the record as it comes to us we have no alternative other than to deny the petition for a rehearing and to confirm the conclusion reached by the trial court.

We adhere to the original opinion.

AFFIRMED.    REHEARING DENIED.